IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASON MURPHY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:04-CV-1218-T |
| | ) | WO |
| BILL FRANKLIN, Sheriff of Elmore | ) | |
| County, Alabama, in his individual | ) | |
| capacity, and GARY BOWERS, | ) | |
| administrator of the Elmore County | ) | |
| Jail, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

After due consideration of the parties' submissions and the applicable law, the Magistrate Judge concludes that *Defendants' Motion to Dismiss*, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc.7, March 22, 2005), should be granted.

**I. BACKGROUND**

On December 20, 2004, Plaintiff Jason Murphy ("Murphy") filed this 42 U.S.C. §1983 ("Section 1983") action for declaratory and monetary relief arising from alleged violations of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, all occurring during his incarceration as a pre-trial detainee in the Elmore County Jail between December 30, 2003, and June 28, 2004. Named as defendants are Elmore County Sheriff Bill Franklin ("Sheriff Franklin") and Elmore County Jail Administrator Gary Bowers ("Bowers"), each sued individually.

Murphy complains about "punitive" conditions of his confinement between December

30, 2003, and March 15, 2004, following an alleged infraction of jail rule. Moved from his cell initially to a "lockdown" cell, at the direction of defendant Bowers, Murphy claims to have been shackled for a full day in a manner which did not facilitate restroom breaks and personal hygiene needs.[1]  Removed to a padded isolation cell, he remained shackled and handcuffed, with his "hands secured to his feet, and his feet ...secured to a 'Chinese toilet,' which consisted of a hole covered with a grate in the floor of the cell." Described as filthy and unsanitary, this toilet "could only be flushed from outside the cell and only by a person who was not incarcerated and who was inclined to flush it."

Murphy claims the defendants provided inadequate medical attention to his wrists which were "cut and bleeding. . . as a result of the painful chafing of the handcuffs," and he "was left so shackled and cuffed and suffering pain" from December 31 until January 12, when he was interviewed outside the cell. Afterwards, Sheriff Franklin ordered him "reshackled to the floor drain...with his hands secured to his feet; " though freed the next day from the drain, he remained handcuffed "toward the end of January" and shackled until the end of February.[2]

While confined in this isolation cell until March 15, 2004, with "only a thin mattress and, and for most of his time..., no blanket or other cover," Murphy alleges that he was not

---

[1] According to Murphy, "[his] right hand was handcuffed to the frame of a cot, his right leg was shackled to the other end of the cot's frame, and he was left in that position..." Though he could lie down on the floor, ...he could not get up or move around."  He urinated and defecated in drinking cups left on the floor. (Compl. ¶¶13, 14)

[2] Compl.¶¶ 17-20.

permitted to exercise; not provided a change of underwear and items of necessary personal hygiene; and denied telephone calls or writing materials. Nor did he receive "written notice of why he was being punished" or "the opportunity to contest his treatment." On June 28, 2004, he complained to no avail[3] about the conditions which resulted in the extreme pain and discomfort, physical injuries, embarrassment, humiliation, severe mental anguish and emotional distress, for which he seeks damages.

## II.  STANDARD OF REVIEW:   Rule 12(b)(6 ) Dismissal

A Rule 12(b)(6) motion challenges the legal sufficiency of a complaint, and dismissal should be granted under this rule only if the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord, Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Fuller v. Johannessen*, 76 F.3d 347, 349-350 (11th Cir. 1996). For the threshold review presented by a Rule 12(b)(6) motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *accord*, *Swierkiewicz v. Sorema,* N.A., 515 U.S. 506, 515 (2002); *Brandt v. Bassett*, 69 F.3d 1539, 1550 (11th Cir. 1995).

The court must accept as true the plaintiff's factual allegations,  draw all reasonable inferences in the plaintiff's favor, and construe the pleadings liberally so as to do substantial

---

[3]Compl. ¶¶ 21-33.

justice. *Conley v. Gibson,* 355 U.S. at 48*; Hishon, id.; Fuller v. Johannessen*, *id.* The duty to construe a complaint liberally, however, is not the equivalent of a duty to re-write the complaint. *Conley, id.*, *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). Only "well-pleaded facts" and "reasonable inferences drawn from those facts" should be accepted, *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule12(b)(6) dismissal." *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir.2001).

### III.  DISCUSSION

Murphy concedes that his Fifth Amendment claims are due to be dismissed on the asserted ground that the Amendment applies only to the federal government.[4] Though not addressed at all in Murphy's response, Defendants maintain correctly that claims for punitive damages are due to be stricken.[5] Disputed are Defendants' contentions (a) that *Graham v. Connor*,490 U.S. 386 (1989) dictates dismissal of Fourth Amendment claims; and (b) that Fourteenth Amendment claims fail to satisfy pleading requirements for Section 1983 cases involving qualified immunity, and even if they did, the defendants are entitled to qualified immunity.  Because the court concludes that the Section 1983 claims do not survive the

---

[4]*Mot.*¶ 1; *Pl.'s Resp.*at 4.

[5]*Mot.* ¶ 4; *Defs. Mem.Br.* at 8 ("Absent waiver, which is not present or alleged in this action, claims for punitive damages pursuant to 42 U.S.C. 1983 are barred by the Eleventh Amendment to the United States Constitution as the award would, in effect, be one against the state as the Defendants are state officials." (citation omitted))

heightened pleading standard required for supervisory officials asserting qualified immunity, no discussion of the qualified immunity defense is necessary.

### A.     Fourth Amendment Claims

In reliance on *Graham v. Connor*, 490 U.S. 386, 455 (1989), Defendants maintain correctly that the Fourteenth Amendment's "due process clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Murphy's response is somewhat ambiguous:

> It is agreed that claims of excessive force asserted by pretrial detainees are governed by a substantive due process standard. This tenet is thoroughly examined not only in *Graham v. Conner* but in numerous cases within the 11th Circuit. *See*, *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996). However, as the Supreme Court points out in *Graham*, issues concerning pretrial detainees create a mix of substantive and procedural due process. *** This considered, although the plaintiff agrees that Graham v. Conner is instructional in examinations of the Fourth Amendment relevant to pretrial detainees, the Court certainly does not intend to make the Due Process Clause of the Fourteenth Amendment exclusive. [6]

Because the controlling law is clearly established, however, the court readily concurs that the complaint does not trigger any Fourth Amendment analysis. *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996) ("Claims involving the mistreatment of . . .pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause ...).

---

[6]*Pl.'s Resp.* at 13-14.

### B.  Fourteenth Amendment Claims*:*  Pleading Specificity

In principal reliance on *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998), Defendants argue that the "individual capacity claims against [them] are due to be dismissed as the Complaint, on its face, does not meet the Eleventh Circuit's pleading standard for 1983 cases involving qualified immunity":

> The Plaintiff's Complaint contains little more than conclusory allegations \*\*\* Because the Plaintiff has failed to allege with any degree of particularity or specificity the acts or omissions of Franklin and Bowers directly affecting the Plaintiff, and has left out crucial facts within his possession that factor heavily into these Defendants' entitlement to qualified immunity, the Complaint is due to be dismissed.[7]

While acknowledging the cited cases, Murphy argues that the Circuit's standard "seems to fly in the face of *Leatherman v. Tarrant County*, *et al.*, 507 U.S. 163 (1993):

> In *Leatherman* the Court opines specifically that a federal court may not apply a "heightened pleading standard" more stringent than the usual pleading requirements of Federal Rules of Civil Procedure, Rule 8(a).  Federal Rules of Civil Procedure, Rule 8(a)(2) simply requires that a complaint include a short and plain statement of the claim showing that the pleader is entitled to relief.[8]

Close scrutiny of the controlling case law does not disclose the conflict suggested, and in fact, any perceived conflict is laid to rest by the circuit court's careful reading of *Leatherman* in *GJR Investments,* 132 F.3d 1359 at 1368:

> We stress at this point, . . . that the heightened pleading requirement is the law of this circuit. . . . Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving

---

[7]*Defs.' Mem. Br.* at 3, 6.

[8]Pl.'s Resp. at 9.

municipalities, *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases involving individual government officials, *see id* at 167, 113 S.Ct. at 1162, and we likewise decline to do so here.

Circuit caselaw since *GJR Investments* affirms that the "heightened pleading" standard governs Murphy's complaint against the supervisory county officials who have asserted their qualified immunity against the claims in this Section 1983 case.[9] The court thus proceeds to apply this standard in examining the allegations against Sheriff Franklin and Jail Administrator Bowers.

Murphy describes each defendant as "a person whose conduct proximately and directly harmed" him (*Compl*. ¶¶ 4-5); identifies the Sheriff as the official responsible for "general supervision" of the jail, . .."who supervises all personnel and. who establishes and promulgates all policies and procedures"(*Compl*. ¶ 10); and attributes to Bowers the "direct supervision"of the jail (*Compl*.¶11). Among the additional facts in ¶¶ 7- 35 of the complaint,

---

[9] *See Wash v. Bauer*, No. 05-10531, 2005 U.S. App. LEXIS 19395, at *5 (11th Cir. Sept. 2, 2005)("[T]here is a heightened pleading requirement when a plaintiff brings a §1983 complaint against officials acting in their individual capacities."); *Swann v Southern Health Partners, Inc.*,388 F.3d. 834, 837 (11th Cir. 2004) ("*Leatherman* made it clear that any heightened pleading requirements in § 1983 actions against entities that cannot raise qualified immunity as a defense are improper."); *Dalrymple v. Reno*, 334 F. 3d 991, 996 (11th Cir. 2003)("[W]e must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."). *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir. 2003); *Laurie v. Ala. Court of Crim. Appeals*, 256 F.3d 1266, 1275-76 (11th Cir. 2001); *Kyle K. v. Chapman, 208 F.3d 3940, 944 (11th Cir. 2000);* Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1281 n. 31 (M.D. Ala. 2004)(recognizing that the Eleventh Circuit employs heightened pleading standards for §1983 claims against state officials in their individual capacities).

however, these defendants are named again in only the following three paragraphs:

> 12.   On or about December 30, 2003,  as a result of an alleged infraction of jail rules, Plaintiff was taken from his cell *at the direction of Bowers*   and put in a "lockdown" cell.
>
> 18.   Plaintiff was left so shackled and cuffed and suffering pain from December 31, 2004, until January 12, 2004, when *Franklin ordered Plaintiff removed from his cell for an interview*.  Following the interview, Franklin ordered that Plaintiff be reshackled to the floor drain as before, with his hands secured to his feet.
>
> 35.   Plaintiff exhausted all available administrative remedies.  *Bowers and Franklin denied him relief.*

(*emphasis supplied*)

Murphy  fails to attribute to either defendant any actionable wrongdoing for his role in either imposing or implementing discipline in response to an infraction by Murphy which is not here denied; nor does he attach any legal impropriety to the fact that both denied the relief he requested in the administrative process.  Moreover, Murphy's litany of unconstitutional conditions suffered during his disciplinary confinement – from the handcuffing and shackling which prevented access to restrooms, hygiene , and recreation to the denial of telephone and other communication privileges – involved no participation by, or specific notice to, these supervisory defendants.  Murphy specifies no act or omission by these defendants as unconstitutional; no facts allege particularized conduct by either which should be evaluated.[10]

---

[10]Murphy does not provide the full factual context for any meaningful evaluation of his allegation that after being interviewed on January 12, Sheriff Franklin ordered that he be "reshackled
(continued...)

In response to defendants' contention that his complaint falls well short of the heightened pleading standard, Murphy states that he "makes no claim under a theory of *respondeat superior*" and, instead, posits supervisory liability because they "allegedly participated in the violation of the plaintiff's constitutional rights by directing, authorizing, or condoning the deprivation through their policies and/or practices. This participation was more than casual and clearly related to the alleged deprivations."[11]

This court has carefully considered the specific allegations highlighted to demonstrate these supervisory defendants' culpability – for Jail Administrator Bowers, ¶¶ 11, 12, 44, and 49, and for Sheriff Franklin, ¶¶ 10, 18, 55, 56, 57, 63, and 68 (Compl. at 8-9) – in the context of the controlling law. The conclusion is inescapable that no facts are specified sufficiently for individual liability against Sheriff Franklin and Jail Administrator Bowers' for either personal conduct resulting in a constitutional deprivation or for supervisory action causally linked to the alleged constitutional deprivation.

Though attributed to the defendants, no "policies and/or practices" are detailed as the basis for these defendants'"directing, authorizing, or condoning" the deprivation of Murphy's constitutional rights."[12] Murphy does not allege that either defendant implemented

---

[10](...continued)
to the floor drain as before, with his hands secured to his feet." It is not clear, for example, if Murphy's undisputed infraction of jail rules and/or his conduct during the interview warranted this shackling; in any event, according to ¶ 19, he was so confined for less than 24 hours.

[11]*Pl.'s Resp.* at 7, *citing, inter alia, Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

[12]*Pl.'s Resp.* at 7,

9

or condoned any standard or routine policy or practice in the jail for pretrial detainees to be handcuffed, shackled, and otherwise mistreated for punitive purposes as alleged by Murphy; nor does he suggest any widespread abuse of pretrial detainees of which these defendants had reasonable notice.[13] Nor do any facts indicate that these supervisory defendants participated in or directed discipline for Murphy which so exceeded authorized penological purposes as to be only punitive in purpose.

At most, the cited paragraphs – construed most favorably to the plaintiff – relate the defendants' supervisory responsibilities for operation of the jail and their "direction" for the imposition of discipline for Murphy's breach of jail rules.[14] A general "direction" by Bowers that Murphy be disciplined by transfer from his cell to a lockdown cell is not the equivalent of a specific directive for Bowers to be handcuffed and shackled in the manner described or subject to any of the deprivations alleged.[15] Similarly, a general attribution to the Sheriff of

---

[13] To recover individually from those who act in supervisory capacities, the Plaintiff must show that they are liable either through their personal participation in the acts comprising the alleged constitutional violation or the existence of a causal connection linking their actions with the violation. *Hill v. DeKalb Reg'l Youth Detention Ct.,* 40 F.3d 1176, 1192 (11th Cir. 1994). A "causal connection" can be shown when there is a history of widespread abuse that should put the supervisor on notice of the problem, and the supervisor nevertheless fails to take corrective measures. *Bozeman v. Orum,* 199 F.Supp.2d 1216, 1233 (M.D.Ala.2002), *citing Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999). Such a connection could also be shown when an improper custom or policy established by the supervisor results in deliberate indifference to constitutional rights. *Id., citing Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991).

[14] Allegations that supervisory defendants personally directed subordinates to undertake challenged actions, or had notice of those actions, have been found insufficient alone as a basis for Section 1983 individual liability against such officials. *See Gonzalez v. Reno*, 325 F.2d 1228, 1235 (11th Cir. 2003).

[15] See Compl. ¶ 12. Neither ¶ 44 nor ¶ 49 attributes to Bowers direct knowledge of the
(continued...)

responsibility for establishing and promulgating "all policies and procedures" (¶¶ 10, 55) does not establish that he established and promulgated any policy and procedure which directed or sanctioned punitive mistreatment of pretrial detainees in general or Murphy in particular. Murphy's allegation in ¶ 56 that the Sheriff "had personal and official knowledge of how Plaintiff was treated" is a conclusion not premised on well-plead facts.

With respect to his claim against Bowers and Franklin for denial of "procedural due process rights" owed him as a pretrial detainee, Murphy contends that he was "provided no written notice of why he was being punished; . . . not given the opportunity to contest his treatment;  provided no hearing, either before the imposition of punishment or after the imposition of punishment; [and] provided no opportunity to object to his punishment."[16] His status as a pretrial detainee insulates him from detention "conditions and restrictions [which] amount to punishment or otherwise violate the Constitution," Murphy reasons:

> A detainee may not be punished prior to an adjudication of guilt. (*citation omitted*).  It follows that, allegations of inhumane treatment aside, any form of punishment imposed upon the plaintiff while he maintains his pre-trial detainee status must be construed as a denial of due process. . .. . . . [T]he plaintiff has alleged that he was subjected to inhumane treatment and conditions by Bowers and Franklin . . . the treatments and conditions were not

---

[15](...continued)
handcuffing, shackling, and allegedly punitive treatment described for Murphy. Unsupported by specific facts from which the conclusion flows, the allegation in ¶ 49 of Bowers' deliberate indifference "to the horrid conditions of Plaintiff's incarceration and the denial of his rights to due process" is purely conclusory.

[16]Compl. ¶¶ 29-32.

11

intended to fulfill any articulable penological purpose.. .[17]

In addition to the erroneous suggestion that all conditions imposed on a pretrial detainee constitute punishment,[18] Murphy's proposition suffers from his failure to allege in the complaint any inadequacy either in the due process provided in the administrative remedies he exhausted or in any other state remedies[19]:

> [A] procedural due process violation is not complete 'unless and until the State fails to provide due process.' *(citation omitted)* In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

*McKinney v. Pate*, 20 F.3d 1550, 1557-1564 (11th Cir. 1994) (*en banc*)[20]

---

[17] *Pl.'s Resp.* at 11-12.

[18] See *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however.... And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Villarreal v. Woodham,* 113 F.3d 202, 207 (11th Cir. 1997) (recognizing that confinement of pretrial detainees is a "necessary restriction" to ensure their presence in court). *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). ("[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.")

[19] See ¶ 33 ("On or about June 28, 2002, Plaintiff complained about his treatment, to no avail. To the extent they were available, Plaintiff has exhausted all administrative remedies.")

[20] *See also Johnson v. Atlanta Indep. Sch. Sys.*, No. 04-16131, 2005 U.S. App. LEXIS 13214, at **9-10 (11th Cir. June 29, 2005)(where State has adequate remedies to cure due process deprivations that plaintiff has not taken advantage of, plaintiff may not pursue claim in federal court);  (; *Foxy Lady, Inc. v. City of Atlanta, Georgia*, 347 F. 3d 1232, 1238-39 (11th Cir. 2003); *Horton v. Bd. of County Comm'rs*, 202 F. 3d 1297, 1300-02 (11th Cir. 2000); *Rigby v. Marshall*, 134 F. Supp. 2d 1259, 1261 (M.D. Ala. 2000).

### IV.  CONCLUSION

Because the Complaint fails to state a claim for which relief can be granted against the supervisory defendants pursuant to the claims asserted under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, it is the Recommendation of the Magistrate Judge that Defendants' Rule 12(b)(6) Motion to Dismiss(Doc. 7) be GRANTED and that this Section 1983 cause of action be DISMISSED WITH PREJUDICE..

It is further

**ORDERED** that the parties shall file any objections to the said Recommendation before October 17, 2005.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of October, 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE