IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JASON MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )CIVIL ACTION NO. 2:04-CV-1218-WKW |
| | ) |
| BILL FRANKLIN, Sheriff of Elmore | ) |
| County, Alabama, in his individual | ) |
| capacity, and GARY BOWERS, | ) |
| administrator of the Elmore County | ) |
| Jail, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the court is Defendants' *Motion to Dismiss Plaintiff's Amended Complaint* under Fed. R. Civ. P. 12(b)(6).  (Doc. #19).  Defendants contend *Plaintiff's Amended Complaint* (Doc. # 17), fails to state a claim upon which relief can be granted.  Upon consideration of the Defendants' motion,  the **Court recommends the District Judge deny the motion.**

**I.  BACKGROUND**

Plaintiff, Jason Murphy ("Murphy") claims that, while incarcerated as a pre-trial detainee in the Elmore County Jail, Defendants Bill Franklin ("Franklin," the Elmore County Sheriff), and Gary Bowers ("Bowers," the Elmore County Jail Administrator), violated guaranteed to Plaintiff by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.  (Doc. #1).  Defendants filed a *Motion to Dismiss* all of

Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. # 7).  On March 28, 2007, the District Court issued an *Opinion and Order* (the "*Opinion*"), granting Defendants' motion to dismiss as to the Fourth Amendment claims, Fifth Amendment claims, and Fourteenth Amendment procedural-due-process claims.  (Doc. #14).  The *Opinion* denied the dismissal of Murphy's claims for punitive damages against the Defendants, and granted Murphy leave to amend his Fourteenth Amendment substantive-due-process claim.  The District Court contemplated a renewed motion to dismiss after Murphy filed an amended complaint.

Murphy filed his *Amended Complaint* (Doc. #17), and Defendants filed a *Motion to Dismiss* with a *Memorandum in Support* (Doc. # #19, 20).  Each party submitted responsive pleadings thereafter, and, upon review, the court now makes its Recommendation .

## II.  STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974).  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the fact of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id*.   A complaint must show the "pleader is entitled to relief."  *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  For the threshold review presented by a Rule 12(b)(6) motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims." *Scheur, id*.; *accord, Swierkiewicz v. Sorema, N.A.,* 515 U.S. 506, 515, 122 S.Ct. 992,  (2002) ( "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits.").

The court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007).  "All pleadings shall be so construed as to do substantial justice."  *Swierkiewicz, id*. at 514, 122 S.Ct. 998 (quoting Fed. R. Civ. 8(f)).  Even so, only "well-pleaded facts" and "reasonable inferences drawn from those facts" should be accepted.  *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

## III. DISCUSSION

Analysis necessarily begins with the findings and instructions in the District Court's *Opinion*, which set forth the accepted facts at this stage of litigation.

>According to Murphy, he was detained in the Elmore County Jail after being arrested by the Elmore County Sheriff's Department on December 30, 2003.  Without explanation,[1] he was moved into a 'lockdown cell' for one day, in which his right hand was cuffed to the frame of his cot and his right leg was shackled to the other end of the cot's frame.  Again without explanation, he was then moved to an isolation cell, where he was shackled hands-to-feet to the toilet, which is actually nothing more than a

---

[1]The *Amended Complaint* states Murphy was placed in the lockdown cell "as a result of an alleged infraction of jail rules."  (Doc. #17, at ¶ 12).

hole in the ground covered by a grate.  He was held in this configuration for almost 12 days and was not released to allow urination or defecation, which caused him to soil himself.  He was also not given any personal necessities such as clean, dry clothing, personal hygiene items, or bedding.

(Doc. #14, at 2-3).

The Court found Murphy's Fourteenth Amendment substantive-due-process claim was only viable against Defendants Franklin and Bowers under a theory of supervisory liability premised on a causal connection, which is in turn established where the supervisor has notice of the alleged deprivation, or his improper custom or policy created the deprivation.  (Doc. #14, at 5-6).  The Court viewed the facts to be "premised on the understanding that [Murphy's] mistreatment occurred pursuant to an official policy promulgated by Franklin and implemented by Bowers."  (Doc. #14, at 8).  However, Murphy's complaint did not explicitly allege he "was subjected to mistreatment pursuant to any specific official policy," which is a necessary "step in the chain of supervisory liability."  The Court granted Murphy leave to amend his complaint to correct the technical oversight.  (Doc. #14, at 8-9).  Further, the Court specifically permitted Murphy to buttress facts supporting a causal connection theory through reference to cases which presented similar allegations of unconstitutional conditions at the Elmore County Jail. (Doc. #14, at 9).

Murphy's *Amended Complaint* alleged "Franklin and  Bowers were on notice of the history of widespread abuse involving shackling prisoners," and "prisoners are routinely shackled to the waste grate in the jail managed by Franklin an Bowers" as a

4

matter of policy.  (Doc. #17, at ¶ ¶ 34, 35).  Murphy alleged "Franklin was on actual or constructive notice of the widespread abuses in the jail," though he "defers decisions on the shackling of specific prisoners to Bowers," and that his treatment subjected him to a deprivation of his constitutional rights.  (Doc. #17, at ¶ ¶ 38-40).  As suggested by the Court's *Opinion*, Murphy named other plaintiff/prisoners who complained of similar conditions while confined in the Elmore County Jail.  (Doc. #17, at ¶ 36, 37).  Murphy further alleged Bowers's actions resulted in a "denial of basic hygiene items" and "subhuman treatment," thus violating his right to substantive due process under the Fourteenth Amendment to the United States Constitution.  (Doc. #17, at ¶ ¶ 44-45, 50, 56).  Finally, Murphy alleged Franklin's personal and official knowledge of the conditions of confinement, pursuant to his own policies, also resulted in a "denial of basic hygiene items" and "subhuman treatment," thus violating his right to substantive due process under the Fourteenth Amendment to the United States Constitution.  (Doc. #17, at ¶ ¶ 60-64).

Defendants urge dismissal of Murphy's *Amended Complaint* for failure to state a claim.  Defendants argue the pleading has three fatal deficiencies: (1) a failure to claim that Bowers or Franklin had any knowledge or awareness of the conditions of Murphy's confinement, or that either actually participated in the perpetuation of the alleged conditions; (2) a failure to implicate a fundamental right or liberty interest protected by the Fourteenth Amendment; and (3) even if the violation of a fundamental right or liberty interest was stated, the claim could not prevail due to an absence of conduct which shocks

5

the conscience.

### A.  Implication of a Fundamental Right

"The analysis of any claim to a substantive due process right should begin with 'a "careful description" of the asserted fundamental liberty interest.'" *Tinker v. Beasley*, 429 F.3d 1324, 1327 (11th Cir. 2005) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268 (1997)).  A pretrial detainee's claims of unconstitutional conditions of confinement under the Fourteenth Amendment are evaluated under Eighth Amendment standards.  *See Marsh v. Butler County*, *id*. at 1024 n.5 ("We have said that the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.").  Where Alabama prison officials cuffed inmates to a hitching post for long periods of time without regard for bodily functions, this Court found "[t]he deprivation of these basic human necessities plainly violates the eighth amendment."  *Austin v. Hopper*, 15 F.Supp.2d 1210, 1258 (M.D. Ala. 1998).  Although *Austin* may be distinguished because the plaintiff was "also subject to public humiliation and ridicule due to the prominent placement of the hitching post . . . where all inmates traverse . . .," the Court noted the "corrections officers' refusal to provide inmates who had urinated or defecated upon themselves with means to clean their bodies constituted a further violation of the inmates' eighth amendment rights."  *Austin, id*., citing *Chandler v. Baird*, 926 F.2d 1057, 1065 (11th Cir. 1991).

Murphy's *Amended Complaint* recites he was shackled to the frame of a cot for one full day in a lockdown cell.  While so shackled, Murphy was "denied an opportunity

6

to use the restroom or to otherwise tend to personal hygiene needs." (Doc. # 17, at ¶ ¶ 12-14). The next day, Murphy was taken to a padded isolation cell, but this time shackled hands to feet, for a period of 12 days, to a "Chinese toilet, which consisted of a hole covered with a grate in the floor of the cell." (Doc. # 17, at ¶ ¶ 16-18). Murphy was freed from the grate on the thirteenth day, but remained cuffed at his hands and feet. His hands were freed toward the end of January, 2004, but he remained confined in the cell until March 15, 2004. Murphy had a thin mattress but the isolation cell did not contain a cot or toilet. (Doc. # 17, at ¶ ¶ 19-23). The allegation of a prolonged deprivation of basic human necessities is comparable to that in *Austin*, where the Court found an Eighth Amendment violation.

In addition to the deprivation of basic sanitation needs, the Eleventh Circuit's review of Alabama's use of a hitching post repeated circuit precedent which held "handcuffing inmates to the fence and to cells for long periods of time" violates the Eighth Amendment. *Hope v. Pelzer*, 240 F.3d 975, 979 (11th Cir. 2001) (quoting *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974)). *See also Fountain v. Talley*, 104 F.Supp.2d 1345, 1354 (M.D. Ala. 2000) (citing *Gates* decision as ruling "that corporal punishment which requires inmates to maintain awkward positions for prolonged periods of time is a constitutional violation."). The *Amended Complaint* alleges Murphy was cuffed to a cot for one day, and to a floor grate, by hands and feet, over a period of several days. Under the foregoing cases, these allegations also state a violation of a fundamental right under the Fourteenth Amendment. Therefore, this court finds Murphy's *Amended Complaint*

7

has sufficiently alleged violations of his Fourteenth Amendment rights such that an analysis of the other factors cited by Defendants as grounds for dismissal is required by this court.

### B. Knowledge by Franklin and Bowers

Franklin and Bowers argue the *Amended Complaint* should be dismissed because Murphy did not allege they knew the conditions of his confinement, or that either "actually participated in the perpetuation of such alleged conditions." (Doc. #20, at 9-10). Defendants claim Murphy's allegation of their notice of the practice of shackling prisoners in the Elmore County Jail is insufficient. (Doc. #20, at 9, n.7). The court notes Defendants do not expressly claim they were actually unaware of Murphy's conditions of confinement, only that it was not sufficiently plead in the *Amended Complaint*. *See Swierkiewicz v. Sorema N. A.*, *id.* at 514, 122 S.Ct. at 999. ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

Franklin and Bowers may be found liable if Murphy can show they personally participated "in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzlez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and

8

failed to stop them from doing so." *Id*. at 1235.  Here, Murphy alleged he was placed in a "lockdown" cell at the direction of Bowers.  (Doc. #17, at ¶ 12).  This court has previously noted the isolation cell at the Elmore County Jail is located next to Bowers's office, and that Bowers has personally seen the conditions of confinement in the isolation cell.  *See Johnson v. Franklin*, 04cv671-CSC (M.D. Ala), Doc. #46, at 3-4.  Murphy does not allege either defendant was responsible for his initial transfer to the isolation cell where he was cuffed hand and foot to the floor grate, but he does specifically allege that Franklin ordered him returned to that cell after interviewing him on January 12, 2004. (Doc. #17, at ¶ ¶ 12, 18).  Murphy's pleading connects Bowers and Franklin to his confinement in the lockdown and isolation cells, and he has thus has alleged "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully."  *Gonzalez, id.*

The court contrasts Murphy's pleading of officials' knowledge with the conclusions regarding the knowledge of corrections officials and officers in *Fountain, supra*.  In that case, this court distinguished between the alleged knowledge of the defendant State prison officials and warden, who had no personal knowledge of the unconstitutional use of the hitching post at a state prison, with that of officers present during the violations.  The claims against the higher officials were dismissed at the 12(b)(6) stage, while those against the on-site officers who ordered or implemented the punishment were allowed to proceed.  *Fountain,* 104 F.Supp.2d at 1353-57.  Here, any actual denial by Franklin or Bowers that they were unaware of the conditions of

Murphy's confinement would require them to plead they were in fact unaware of the conditions in the very jail they were charged to administer as Sheriff and Jailer, respectively.  *See Austin*, 15 F.Supp.2d at 1261 ("[A] court may determine that the prison official had knowledge of the risk of harm from inferences from circumstantial evidence.")

The *Amended Complaint* alleged Murphy's confinement in unconstitutional conditions was the direct result of Defendants' orders to personnel at the Elmore County Jail.  Notwithstanding Defendants' claim that their knowledge was insufficiently plead, the court finds Murphy's *Amended Complaint* sufficiently plead knowledge on the part of Defendants as to the conditions of confinement at issue in this case.

### C.  "Conscience-shocking" Conduct

Defendants' final argument for dismissal is Murphy failed to allege conduct which shocks the conscience.  "As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.' "  *Lumley v. City of Dade City, Fla.,* 327 F.3d 1186, 1196 (11th Cir. 2003).  Defendants correctly cite the Eleventh Circuit's guidance that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *Tinker, id*. at 1328.  An analysis of whether Murphy's claims demonstrate conduct which is unjustifiable by any government interest, and therefore shocks the conscience,  follows.

A first point of Defendants' attack on Murphy's claims in this regard cites the

10

*Amended Complaint*'s statement that he was placed in the lockdown and isolation cells "as a result of an alleged infraction of jail rules." (Doc. #20, at 13). Defendants use this statement to characterize Murphy's treatment as necessary for "preserving internal order and discipline" in the jail, and thus justified under circuit precedent. While deference is owed to corrections officials in policy and practical matters regarding discipline, this "deference 'does not insulate from review actions taken in bad faith or for no legitimate purpose.'" *Austin, id*. at 1255. While Defendants do not explain what behavior by Murphy led to his physical restriction and isolation, they do not describe exigent or volatile circumstances that would justify the prolonged deprivation of Murphy's rights as alleged. *Id*. at 1254-55.

Defendants assert Murphy was "not deprived of a single human need." (Doc. #20, at 14). Defendants note Murphy had food and water, showers, and was able to "use the restroom." Defendants support their position with cites to Murphy's own descriptions of his treatment. Murphy recounted his receipt of food and water while confined to the floor, his general inability to use items related to personal hygiene (despite the occasional shower), and his use of cups for urination and defecation. (Doc. #20, at 14). Defendants submit the conditions of confinement were "arguably unpleasant," but do not shock the conscience.

In *Tinker*, the Eleventh Circuit panel found officers' conduct "untoward and upsetting" but not shocking, where a suspect was interrogated over a period of days, threatened, verbally abused, wrongly informed that she had been abandoned by counsel,

and told that her family should not try to intervene. *Tinker*, 429 F.3d at 1329. The officers' conduct was deemed justifiable where the plaintiff was known to, and named as the culprit, by the gunshot victim prior to her death. *Id*. *Tinker* reflects the subjective determination necessarily involved in deciding whether officials' conduct shocks one's conscience. Citing a Tenth Circuit decision, the Eleventh Circuit noted "however ill-advised, inappropriate, or ill-considered it might have been, [the police action] does not shock the conscience of federal judges - at least not the conscience of these three federal judges." *Id*., citing *Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir. 2001). Absent some type of justification such as that cited in *Tinker*, this federal court is sufficiently "shocked" by the alleged conditions of Murphy's confinement to recommend the Court find this element is successfully demonstrated by the *Amended Complaint*.

### D.  Qualified Immunity

In Defendants' reply brief to Murphy's defense of the *Amended Complaint*, they assert the shield of qualified immunity. (Doc. #23, at 13). The Eleventh Circuit has succinctly stated "[P]ublic officials are entitled to qualified immunity . . . if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, *id*. at 981. To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). The burden then "shifts to the plaintiff to show that qualified immunity is not appropriate."

12

*Id.*  "The Supreme Court has set forth a two-part test for the qualified immunity analysis."  *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002).  A court must first determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 2513 (2002) (citations omitted).  "If a constitutional right would have been violated under the plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established."  *Vinyard,* 311 F.3d at 1349 (internal quotation marks and citations omitted).

Bowers and Franklin contend no previous federal cases, including the *Hope v. Pelzer* litigation in the Eleventh Circuit or Supreme Court, put them on notice their alleged conduct violated detainees' Fourteenth Amendment rights.  Their contention was rejected in a companion case where, despite the similarities between *Hope* and conditions at the Elmore County Jail, the defendants denied notice of any unconstitutionality.  After noting that both cases presented prolonged cuffing and sanitary deprivations, the Court termed Defendants position "incredulous."  *See Brinson v. Franklin*, 2:04-cv-1217-WKW (M.D. Ala), Doc. #16, at 5-6.  This court agrees, and recommends Defendants be denied the shield of qualified immunity at this stage.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion for a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 19) be DENIED.  It is further the Recommendation of the Magistrate Judge that this case be referred back to the undersigned for additional proceedings relative to the claims

13

presented in Plaintiff's complaint.

*It is further ORDERED that the parties shall file any objections to the said Recommendation by July 16, 2007.*   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of July, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE