IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
JASON MURPHY,                    )
                                 )
        Plaintiff,               )
                                 )  CIVIL ACTION NO.
        v.                       )   2:04cv1218-MHT
                                 )        (WO)
BILL FRANKLIN, Sheriff of        )
Elmore County, in his            )
individual capacity; and         )
GARRY BOWERS, Administrator      )
of the Elmore County Jail,       )
in his individual                )
capacity,                        )
                                 )
        Defendants.              )
```

OPINION AND ORDER

Upon consideration of the recommendation of the

United States Magistrate Judge and the objections filed

by defendants, and after an independent and de novo

review of the record, it is ORDERED as follows:

    (1) The defendants' objections (Doc. No. 29) are

        overruled.

(2) The recommendation of the United States
     Magistrate Judge (Doc. No. 27) is adopted.

(3) The defendants' motion to dismiss (Doc. No. 19)
     is denied.

                        * * *

The court adds the following comments:

The court has determined that the motion to dismiss should be denied on grounds narrower than those considered by the magistrate judge. Rather than considering information not in plaintiff Jason Murphy's amended complaint, this court has found, on the face of the complaint, that it states a claim for which relief can be granted and that qualified immunity does not apply.[1]

---

1. This case is currently before the court regarding Murphy's amended complaint. In considering the motion to dismiss the first complaint, this court found that Murphy had not adequately alleged supervisory liability and granted him leave to amend. Murphy v. Franklin, No. 06cv583, 2007 WL 954310, at *3 (M.D. Ala. Mar. 28. 2007).

## I. BACKGROUND

Murphy's case is the latest of several that have arisen out of allegedly unconstitutional treatment of inmates at the Elmore County Jail.  He alleges that, as a pretrial detainee, he was deprived of Fourteenth Amendment substantive-due-process rights following an alleged infraction of jail rules.  He spent one day in a lockdown cell, where his right hand was shackled to the frame of a cot and his right leg was shackled to the other end of the frame, such that he could not get up or move around.[2]  While in the cell, he soiled himself, as he had to urinate and defecate into drinking cups left on the floor of his cell, and he was unable to clean himself or maintain basic levels of hygiene.  Am. Compl. (Doc. No. 17) ¶ 14.  Murphy was then taken to an isolation

---

2. Because this case comes before the court on a motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King and Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor.  Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1999).

3

cell.   His cuffed hands were secured to his shackled feet, which were secured to a "Chinese toilet" consisting of a hole in the cell's floor covered with a grate.   Id. at ¶ 16.

Murphy was kept in this position from December 31, 2003, until January 13, 2004.   His only respite came during an interview with defendant Bill Franklin, the county sheriff, on January 12, after which Franklin ordered him reshackled to the floor drain.   Id. at ¶ 18. Murphy was freed from the floor drain the next day, but he was kept in the isolation cell--gradually being released from the handcuffs and shackles--until March 15. Id. at ¶¶ 19-21.   For the duration of his occupancy of the cell, he was unable to exercise, was subject to subhuman conditions due to the presence of the Chinese toilet, was unable to provide for his personal hygiene, and was not permitted a change of underwear.   Id. at ¶¶ 22, 24, 26-27.

Murphy filed suit against Franklin and defendant Garry Bowers, the administrator of the Elmore County Jail, claiming substantive-due-process violations. The defendants moved to dismiss, arguing that Murphy's allegations failed to (1) implicate a fundamental right; (2) describe "conscience-shocking" conduct; and (3) include evidence showing that Franklin and Bowers, as supervisors in the jail, had notice of the alleged abuses and failed to correct them; they also argued that (4) the case must be dismissed because they are entitled to qualified immunity.

## II. DISCUSSION

The court adopts the magistrate judge's recommendations as to (1), (2), and (4) and will discuss (3) in greater detail below.

A. Adoption of the Magistrate Judge's Recommendation

1. Violation of a fundamental right

Murphy did allege the violation of a fundamental right, as his allegations highly resemble actions that have already been found to be constitutional violations. See, e.g., Hope v. Pelzer, 240 F.3d 975, 1979 (11th Cir. 2001) (requiring inmates to "maintain awkward positions for prolonged periods of time"), rev'd on other grounds, 536 U.S. 730 (2002); Gates v. Collier, 501 F.2d 1291, 1306 (5th Cir. 1974)[3] (depriving inmates of hygienic materials; handcuffing inmates to a fence or cell for long periods of time; forcing inmates to "maintain awkward positions for prolonged periods"); Austin v. Hopper, 15 F. Supp. 2d 1210, 1258 (M.D. Ala. 1998) (Thompson, J.) (denying inmates the opportunity to use the restroom and "refus[ing] to provide inmates who had

_____

3. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

urinated or defecated upon themselves with a means to clean their bodies").[4]

## 2. "Conscience-shocking" conduct

In the Eleventh Circuit, a plaintiff claiming a substantive-due-process violation must prove that the conduct at issue "shocks the conscience." Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003). Conduct is most likely to rise to the level of conduct-shocking if it is "intended to injure in some way unjustifiable by any government interest." Tinker v. Beasley, 429 F.3d 1324, 1328 (11th Cir. 2005). In such a circumstance, "a court may infer that the purpose of the government action is punishment." See Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir. 1984).

---

4. The cases cited are Eighth Amendment cases, which are relevant precedent here because the "standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc).

The actions taken here cannot be explained by any reasonable government interest, as whatever infraction Murphy allegedly committed, prison officials' need to maintain order and discipline would almost certainly not justify a response lasting two-and-a-half months that subjects the detainee to inhumane conditions.  While law-enforcement officials are entitled to deference on prison-management issues, "this deference 'does not insulate from review actions taken in bad faith and for no legitimate purpose.'"  <u>Austin</u>, 15 F. Supp. 2d at 1255 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986)). As such, the court can infer that the alleged conduct is punishment and that the conduct thus does "shock the conscience."

### 3. Qualified immunity

In evaluating a qualified immunity claim, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all,

8

and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). As described previously, Murphy has adequately alleged that a constitutional right was violated, and that the right was clearly established at the time of the alleged activities.

Furthermore, in <u>Hope v. Pelzer</u>, the Supreme Court counseled against "rigid overreliance on factual similarity" in qualified-immunity claims. 536 U.S. 730, 742 (2002). The Court refused to "draw a constitutional distinction" between handcuffing inmates to fences for prolonged periods, as in <u>Gates</u>, 501 F.2d at 1306, and handcuffing an inmate to a hitching post for seven hours, as was alleged in <u>Hope</u>. <u>Hope</u>, 536 U.S. at 730. Franklin and Bowers nevertheless seek a similarly rigid constitutional line, but their argument has already been rejected by another judge: Judge Fuller, in one of the other suits against Franklin and Bowers, could "identify

9

no difference in the severity of the treatment between painfully cuffing one's hands at the level of his head to a hitching post [in <u>Hope</u>] and shackling one's hands and legs to the grate of an open toilet." <u>Cotney v. Franklin</u>, No. 03cv1181, 2005 WL 1514047, at *9 (M.D. Ala. June 24, 2005).  In another case against Bowers and Franklin, Judge Watkins called the defendants' claimed lack of notice "incredulous" in the face of a situation "so clearly analogous to the hitching post scenario in Hope." <u>Brinson v. Franklin</u>, No. 04cv1217, 2006 WL 3147673, at *4 (M.D. Ala. Nov. 1, 2006).

### B. Defendants' Notice of Unconstitutional Behavior

The remaining issue concerns whether Murphy's complaint included information sufficient to show that Franklin and Bowers had notice of alleged abuses in the jail.  In his recommendation, the magistrate relied on what the defendants failed to deny, rather than what the plaintiff failed to show.  He commented, for example,

that the defendants did not actually deny knowledge of Murphy's conditions of confinement and that they did not claim that exigent or volatile circumstances justified Murphy's treatment.   Recommendation at 8.   These statements place an improper burden on the defendants to deny allegations at the motion-to-dismiss stage.   <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1982 (2007) (stating that a motion to dismiss is not appropriate "for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint").   Nor was it proper to take judicial notice, from a prior case against Franklin and Bowers, of the disputable fact that the isolation cell "is located next to Bowers's office, and that Bowers has personally seen the conditions of confinement." Recommendation at 9.   <u>See</u> <u>United States v. Jones</u>, 20 F.3d 1549, 1553 (11th Cir. 1994) ("In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite.")

11

This court, limiting itself to the complaint, still concludes that Murphy has demonstrated that Bowers and Franklin had notice of allegedly unconstitutional treatment in the Elmore County Jail.  By enumerating the five prior grievances filed against Franklin and Bowers concerning inmates' treatment in the Elmore County Jail, Am. Compl. ¶ 36, Murphy adequately alleges evidence that they had notice of problems in the jail.[5]  In the grievances filed prior to the actions at issue in this case, David Cotney, Patricia Henderson, Felix Humphrey, and Devon Kelley alleged having been shackled to the floor drain as punishment, and at least one detainee before Murphy claimed a lack of basic hygiene.  With this evidence, Murphy is able to survive the heightened

---

5. Two additional grievances arose after the alleged events, and four of the seven grievances have grown into lawsuits.  See Brinson v. Franklin, No. 04cv1217, 2006 WL 3147673 (M.D. Ala. Nov. 1, 2006) (Watkins, J.); Johnson v. Franklin, No. 04cv671 2005 WL 1899361 (M.D. Ala. Aug. 8 2005) (Coody, J.); Cotney v. Franklin, No. 03cv1181, 2005 WL 1414047 (M.D. Ala. June 24 2005) (Fuller, C.J.); Adams v. Franklin, 111 F. Supp. 2d 1255 (2000) (DeMent, J.)

12

pleading standards for § 1983 claims in this circuit. See <u>GJR Investments, Inc. v. Escambia County, Fla.</u>, 132 F.3d 1359, 1367 (11th Cir. 1998) (plaintiff must "allege with some specificity the facts which make out its claim"). Factual detail is particularly necessary in cases involving qualified immunity, as the court must assess whether an action violated a clearly established right. <u>Id</u>.

By thus showing that Franklin and Bowers had notice, Murphy is also able to make out a claim of supervisory liability. As a general rule, plaintiffs alleging supervisory liability must demonstrate either that the defendants personally participated in the alleged constitutional violation or that "there is a causal connection between actions of the supervising official and the alleged constitutional violation." <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003). Murphy makes no claim regarding the former, so he must rely on the latter.

A causal connection may be established "by facts which support an inference that the supervisor directed the subordinates to act unlawfully," id. at 1235, or facts showing that the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. Murphy's complaint fails to show that Franklin and Bowers directed jail personnel to engage in the allegedly unconstitutional activities; his only evidence is that Bowers ordered Murphy placed in the lockdown cell and that Franklin, after interviewing Murphy, ordered him returned to the isolation cell and reshackled to the Chinese toilet. Am. Compl. at ¶¶ 12, 18. The defendants describe these orders as "innocuous instructions associated with the legitimate operation of a correctional facility," Defs.' Objection to Recommendation at 17, and lacking evidence that Franklin and Bowers ordered the unconstitutional conduct itself, Murphy cannot prove liability based on their orders.

14

Murphy does, however, successfully use the other grievances against the Elmore County Prison to show that "a history of widespread abuse" could have put Franklin and Bowers "on notice of the need to correct the alleged deprivation." <u>Gonzalez</u>, 325 F.3d at 1234.  One judge on this court has previously found such a enumeration of prior allegations to demonstrate that the defendants had notice: Judge DeMent, when assessing the complaint in <u>Adams v. Franklin</u>, the first lawsuit filed against Bowers and Franklin, explained that the plaintiff could have shown notice by "alleging that the Elmore County deputies had a <u>history of engaging in similar unconstitutional acts</u> in the past so as to <u>place Franklin and Bowers on notice</u> of the need to correct the violations at issue." 111 F. Supp. 2d 1255, 1265 (M.D. Ala. 2000) (emphasis added).  While there may have been no such facts to allege when <u>Adams</u> was decided in 2000, such allegations certainly exist--and Murphy adequately alleged them--in this case.  These prior allegations suggest that Franklin

15

and Bowers were on notice that their subordinates might act unlawfully, and their failure to stop the behavior establishes a causal connection between the supervisors' policies and the abuse itself. <u>See Gonzalez</u>, 325 F.3d at 1235.  Even if the other allegations are not identical to Murphy's, their existence could demonstrate a pervasive problem at the prison that the defendants knew about but opted not to solve.

Finally, and perhaps most importantly, Franklin and Bowers--despite having protested that Murphy did not "insist" that they received notice of "any of the purported previous allegations," Defs.' Objection to Recommendation at 24--conceded, in a status conference, that the pleadings' list of prior allegations of unconstitutional treatment was adequate to give them notice.  The court asked why this list would not be sufficient to show notice, and defense counsel responded, "For that particular situation, I wouldn't necessarily

16

dispute that."   Transcript of telephone status
conference, at 6, line 12-16.

In sum, because the amended complaint adequately
states a supervisory liability claim against the
defendants, their motion to dismiss is without merit.

DONE, this the 17th day of August, 2007.


        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE